Matthew Zimmerman, Esq. (SBN 212423)
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333
Facsimile: (415) 436-9993
Email: mattz@eff.org

David M. Given, Esq. (SBN 142375)
Nicholas A. Carlin, Esq. (SBN 112532)
PHILLIPS, ERLEWINE & GIVEN LLP
50 California Street, 35th Floor
San Francisco, California 94111
Telephone: (415) 398-0900
Facsimile: (415) 398-0911

Attorneys for Defendant-Movant JOHN DOE "STOKKLERK"

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| USA TECHNOLOGIES, INC., <br><br> Plaintiff-Respondent, <br><br> vs. <br><br> JOHN DOE, a.k.a. "STOKKLERK" <br><br> Defendant-Movant. | Docket No. CV 09-80275-MISC-SI <br><br> **DEFENDANT-MOVANT JOHN DOE "STOKKLERK"'S REPLY IN SUPPORT OF MOTION TO QUASH THE SUBPOENA TO YAHOO! INC. SEEKING IDENTITY INFORMATION** <br><br> DATE: December 18, 2009 <br> TIME: 9:00 a.m. <br> COURTROOM: 10, 19th Floor <br> JUDGE: Hon. Susan Illston |

I.   **INTRODUCTION**

Plaintiff USA Technologies' subpoena seeking the identity of online critics of the publicly traded company is not enforceable. The statements Plaintiff characterizes as defamatory are instead protected opinion, hyperbolic and not capable of being disproved. In addition, Plaintiff can neither plead a prima facie claim of defamation nor support that claim with evidence as required by the First Amendment in order to enforce the subpoena. Moreover, by effectively abandoning its Securities Exchange Act claim, a claim insufficiently pled to begin with, Plaintiff has confirmed that this case was improperly brought in federal court. Absent subject matter jurisdiction, the Court should quash the subpoena on this ground as well.

II.   **ARGUMENT**

   A.   **This Court Has No Basis Upon Which to Exercise Subject Matter Jurisdiction to Enforce the Challenged Subpoena.**

As a threshold matter, this Court does not have subject matter jurisdiction to issue or enforce Plaintiff's subpoena. Because Plaintiff is unable to satisfy this basic requirement, this Court must quash the challenged subpoena at the outset. It is elemental that federal courts have limited jurisdiction, and any exercise of power must be authorized by the Constitution or statute. See, e.g., Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994). Any exercise of power is presumptively invalid and the burden of establishing the contrary rests upon the party invoking the court's jurisdiction. Id. Plaintiff's Complaint asserts[1] federal question jurisdiction premised solely on its federal Securities Exchange Act allegations and seeks to invoke supplemental jurisdiction over its state defamation claim. In its Opposition, however, Plaintiff fails to explain or defend its federal claims. Opposition at 19 n.22 ("USAT does not address [its federal claims] here because it has established an actionable defamation claim under Pennsylvania law which by itself must defeat Stokklerk's motion."). While the arguments offered in support of the remaining state law claim are themselves insufficient to satisfy the First Amendment (see Defendant's opening brief and discussion starting below in Section B), Plaintiff has manifestly

---

[1] As filed, Plaintiff's Complaint is missing its second page that presumably contained a jurisdictional statement. A review of the federal court's PACER electronic filing system, however, confirms that the Complaint invokes the Court's federal question jurisdiction.

1

CV 09-80275-MISC-SI   DEFENDANT-MOVANT JOHN DOE "STOKKLERK"'S REPLY
IN SUPPORT OF HIS MOTION TO QUASH

failed to make a prima facie showing that the Court has subject matter jurisdiction.  See, e.g., Rio Properties, Inc. v. Rio International Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002) (plaintiff must make a prima facie showing establishing court's jurisdiction to avoid dismissal).

Earlier this year, the district court for the District of Columbia refused to enforce a subpoena seeking the identity of an online speaker under similar circumstances, noting that because "there is a total absence of subject-matter jurisdiction in this Court as revealed on the face of the complaint," the subpoena could not be enforced.  Sinclair v. TubeSockTedD, 596 F. Supp. 2d 128, 134 (D.D.C. 2009).  The court concluded:  "Federal jurisdiction based on diversity of citizenship cannot simply be assumed, as [plaintiff] wishes, with discovery then permitted in hopes that a proper basis for jurisdiction can later be ascertained." Id.

Likewise, there is no subject matter jurisdiction here.  As the Supreme Court and the Ninth Circuit have held, the subject matter jurisdiction of a court is called into doubt "where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." Bell v. Hood, 327 U.S. 678, 682-83 (1946).  "The mere allegation of a [federal question] is not sufficient to raise a 'colorable' [federal claim] to provide subject matter jurisdiction.  Rather, the plaintiff must allege "facts sufficient to state a violation . . ."). Cassim v. Bowen, 824 F.2d 791, 795 (9th Cir. 1987).  See also, e.g., Subia v. Commissioner of Social Sec., 264 F.3d 899, 902 (9th Cir. 2001) ("A [federal] claim is not colorable if it clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial or frivolous.") (quoting Hoye v. Sullivan, 985 F.2d 990, 991-92 (9th Cir.1992)); Barnett v. Bailey, 956 F.2d 1036, 1041, 1044 (11th Cir. 1992) (dismissal of plaintiff's Voting Rights Act claim for failure to allege discrimination was properly one based on lack of subject matter jurisdiction as the claim was "patently without merit" (citing Bell)).

Plaintiff's asserted basis for subject matter jurisdiction is meritless and pretextual.  First, in its Complaint, Plaintiff makes no specific factual allegations in support of its federal cause of action and instead merely recites the elements of the claim and adds its own legal conclusions.  This is insufficient to make out a viable cause of action.  Plaintiff did not plead "enough facts to

state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). See also, e.g., Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'").[2]

Second, in its Opposition Plaintiff explicitly declined to offer any justification whatsoever for its federal claims, effectively conceding that its allegations do not make out a prima facie claim. A "failure to oppose an argument [is] a statement of non-opposition." Hutchens v. Alameda County Social Services Agency, No. C-06-06870 SBA, 2008 WL 4193046, at *17 n.21 (N.D. Cal. Sept. 10, 2008). See also, e.g., Cincinnati Ins. Co. v. Eastern Atlantic Ins. Co., 260 F.3d 742, 747 (7th Cir. 2001) (failure to oppose argument serves as a waiver by the party opposing a motion). Plaintiff's decision to abandon any defense of its sole hook for federal question jurisdiction effectively waives any argument that its federal claim allegations are sufficient.

Third, even if Plaintiff was able to provide prima facie support for its federal claim, the Court should still decline to exercise supplemental jurisdiction over the state defamation claim because the state claim "substantially predominates" the litigation. See, e.g., De Ascencio v. Tyson Foods, Inc., 342 F.3d 301, 312 (3rd Cir. 2003) (holding that district court abused its discretion in exercising supplemental jurisdiction where federal claim was merely an "appendage" to the central state law claim); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) (judicial economy, convenience, fairness, and comity "favor a decision to relinquish jurisdiction when state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought.") (quoting Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966)). Plaintiff in its Opposition repeatedly describes its Complaint as a "defamation case" and claims that its subpoena must be enforced so that it can obtain a "hearing on its defamation claim." See, e.g., Opposition at 1, 22, 23 ("USAT must learn Stokklerk's identity to

---

[2] See also FED. R. CIV. P. 9(b) ("In alleging fraud . . . a party must state with particularity the circumstances constituting fraud or mistake."). Plaintiff did not plead any facts, let alone facts with particularity, in support of its allegation that the statements were part of a "scheme" to "defraud."

proceed with its defamation case pending before the United States District Court for the Eastern District of Pennsylvania."); ("In any event, USAT's complaint adequately sets forth a cause of action for defamation."); ("USAT seeks to determine Stokklerk's identity to obtain a fair hearing of its defamation claim."). As the D.C. Circuit has held, "the apparent weakness of the [federal] claim – even before discovery – is . . . a factor to be weighed in determining whether the state claim 'substantially predominates.'" <u>Diven v. Amalgamated Transit Union</u>, 38 F.3d 598, 602 (D.C. Cir. 1994). Plaintiff's reliance on its (meritless) state claim weighs against the exercise of supplemental jurisdiction even further.

Stripped to its essence, Plaintiff's theory is that when a publicly traded company alleges defamation by an anonymous Internet speaker who criticizes the company and its management, that company may also bring a federal Securities Exchange Act claim – without the benefit of a single specific factual allegation – and thereby bootstrap its state claims into federal court. This Court should reject Plaintiff's pretextual efforts. Plaintiff would not be prejudiced by the Court's refusal to enforce the subpoena on jurisdictional grounds. While (as explained below) there is no factual or legal basis for it to do so, Plaintiff is free to refile its state claims in state court if the Court chooses to quash the subpoena on this basis. As the D.C. Circuit has said: "The federal courts are not free-standing investigative bodies whose coercive power may be brought to bear at will in demanding documents from others. Rather, the discovery devices in federal court stand available to facilitate the resolution of <u>actions cognizable in federal court</u>." <u>Houston Business Journal, Inc. v. Office of the Comptroller of the Currency</u>, 86 F.3d 1208, 1213 (D.C. Cir. 1996) (emphasis added).

Without a valid federal claim, this Court lacks subject matter jurisdiction to issue or enforce the subpoena. While "Federal Rule of Civil Procedure 45 grants a district court the power to issue subpoenas as to witnesses and documents, [] the subpoena power of a court cannot be more extensive than its jurisdiction." <u>United States Catholic Conference v. Abortion Rights Mobilization, Inc.</u>, 487 U.S. 72, 76 (1988). As the Supreme Court explained, "if a district court does not have subject-matter jurisdiction over the underlying action, and the process was not issued

in aid of determining that jurisdiction, then the process is void . . ." Id.  Accordingly, Plaintiff's subpoena must be quashed for lack of subject matter jurisdiction.

### B. Plaintiff Fails To Meet the Heightened Discovery Standard Required by the First Amendment.

Even if this Court could properly exercise subject matter jurisdiction over this case, the subpoena must be quashed because Plaintiff has not met the heightened First Amendment discovery standard required of litigants seeking to invoke the power of the federal judiciary to unmask anonymous speakers.

#### 1. Plaintiff Misstates the First Amendment Standard Set Forth in *Dendrite* and *Highfields Captial Management, L.P.*

While it concedes that Dendrite Int'l v. Doe No. 3, 775 A.2d 756 (N.J. App. 2001) and Highfields Capital Management, L.P. v. Doe, 385 F. Supp. 2d 969 (N.D. Cal. 2005) set forth the appropriate Constitutional test for unmasking online speakers, Plaintiff fails to mention a critical requirement of that test:  that a party seeking identity information provide "competent evidence" in support of the prima facie elements of its claim.  See Dendrite, 775 A.2d at 760-61 ("[T]he plaintiff must produce sufficient evidence supporting each element of its cause of action . . ."); Highfields Capital Management, 385 F. Supp. 2d at 974-76 ("[T]he plaintiff must adduce competent evidence – and the evidence plaintiff adduces must address all of the inferences of fact that plaintiff would need to prove in order to prevail under at least one of the causes of action plaintiff asserts.") (emphasis in original).  As discussed below, the subpoena must be quashed because Plaintiff has failed both in making a prima facie case and in supporting its case with evidence.

#### 2. Plaintiff Does Not Properly Allege Falsity and Malice or Support Such Allegations With Competent Evidence.

Plaintiff does not dispute that an allegedly defamatory statement that "bears on a matter of public concern" raises "First Amendment concerns compel[ing] the plaintiff to prove, as an additional element, that the alleged defamatory statement is in fact false." Lewis v. Philadelphia Newspapers, Inc., 833 A.2d 185, 191 (Pa. Super. Ct. 2003) (citing Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767, 777 (1986)).  Rather, Plaintiff argues that "Stokklerk's rants do not … touch on any matter of public concern . . ." Opposition at 20.  Plaintiff is wrong.

Speech about the operations of a publicly traded company engaged in commercial activities constitutes matters of public concern for First Amendment purposes. As the Supreme Court stated in <u>Virginia State Board of Pharmacy v. Va. Citizens Consumer Council, Inc.</u>, 425 U.S. 748 (1976):

> So long as we preserve a predominantly free enterprise economy, the allocation of our resources in large measure will be made through numerous private economic decisions. It is a matter of public interest that those decisions, in the aggregate, be intelligent and well informed. To this end, the free flow of commercial information is indispensable.

425 U.S. at 765. Especially as Plaintiff is explicitly alleging that Defendant "accuse[d] USAT of fraudulent and illegal activity" (Opposition at 2), the statements at issue certainly constitute matters of public concern, requiring Plaintiff not only to prove the falsity of the statements but also to prove malice. <u>See</u>, e.g., <u>Tucker v. Philadelphia Daily News</u>, 848 A.2d 113, 130-31 (Pa. 2004) (where speech regards matter of public concern, plaintiff must show falsity and actual malice by clear and convincing evidence); <u>Global Telemedia Intern., Inc. v. Doe 1</u>, 132 F. Supp. 2d 1261, 1265 (C.D. Cal. 2001) (Internet postings about corporate activity constitute an issue of public importance upon considering pertinent factors such as whether the company was publicly traded, the number of investors, and whether the company had promoted itself by means of numerous press releases); <u>ComputerXpress, Inc. v. Jackson</u>, 93 Cal. App. 4th 993, 1007-08 (Cal. App. Ct. 2001) (same); <u>Troy Group, Inc. v. Tilson</u>, 364 F. Supp. 2d 1149, 1154 (C.D. Cal. 2005) (finding Internet posts about corporate activity of company with small number of shareholders that promoted itself through press releases regarded a matter of public concern).[3]

Plaintiff is a publicly traded company, with over 22 million outstanding shares of stock.[4] The company actively solicits press coverage, issuing over 180 press releases since mid-2005,

---

[3] In any event, under the Supreme Court's decision in <u>New York Times v. Sullivan</u>, 376 U.S. 254 (1964) and its progeny, public figures must allege and prove malice as a general matter. <u>See</u>, e.g., <u>Steaks Unlimited, Inc. v. Deaner</u>, 623 F.2d 264, 272 (3rd Cir. 1980) (corporation which had engaged in extensive advertising is a public figure for First Amendment purposes, requiring it to prove falsity and malice); <u>American Future Systems, Inc. v. Better Business Bureau of Eastern Pennsylvania</u>, 923 A.2d 389, 404-05 (Pa. 2007) (same).

[4] <u>See</u> USA Technologies' 2009 Form 10-K Annual SEC Report at p.1, attached as Exhibit 1 to the Supplemental Declaration of Matthew Zimmerman ("Zimmerman Supplemental Decl."). Also available at http://www.sec.gov/Archives/edgar/data/896429/000118811209002061/t66291_10k.htm, at p. 1.

frequently appealing directly to stockholders, announcing product developments, the company's acquisition of patents, and business deals, and generally touts the performance of the company and of management. See Exhibit 2 to Zimmerman Supplemental Decl. (list of Plaintiff's press releases and along with text of selected press releases). Moreover, the company has for the past month been involved in a public dispute with what it calls "dissident shareholders" who, criticizing Plaintiff for the same shortcomings as did Defendant – excessive compensation for management, lack of profits, consistently falling stock price – are publicly lobbying shareholders to replace the current board of directors. See Exhibit 2 to Zimmerman Supplemental Decl. at pp. 33, 38, Exhibit 3 to Zimmerman Supplemental Decl. In fact, on December 9, 2009, Plaintiff canceled its annual shareholder meeting, citing its dispute with dissident shareholders and publicly repeating its own rationale as to why its current management should stay in power. Exhibit 2 to Zimmerman Supplemental Decl. at 41. Plaintiff cannot seriously contend that Defendant's criticism of a publicly traded company, one that is actively solicitous of public attention about its management and performance, and engaged in an ongoing controversy surrounding its management highlighted by the board's recent decision, is not a matter of public concern..

     Accordingly, the subpoena must be quashed because Plaintiff has failed to allege and support with competent evidence that Defendant's statements are false. This failure is not surprising as the allegedly defamatory statements are either true or not capable defamatory meaning. Plaintiff has presented no evidence, for example, to counter Defendant's statement that Plaintiff's CEO is a "known liar" because he wrongfully "assured investors that USAT would be profitable in the same fiscal year." Opposition at 5. Unless it can submit evidence that its CEO never made such a pledge or that the company did in fact become profitable in the year he made the promise, Plaintiff does not meet its burden.

     Plaintiff similarly cannot provide evidence going to "disprove" that management's poor performance did not constitute "legalized highway robbery," or that Plaintiff's CEO was "fleecing humanity"[5] because the statements are hyperbolic statements of opinion incapable of being

---

[5] As pointed out in Defendant's opening brief, Plaintiff's alleged statement regarding Plaintiff's CEO "fleecing humanity" was misquoted. By not opposing Defendant's arguments regarding this
*(footnote continued on following page)*

disproved and/or simply have no defamatory meaning.  See, e.g., Beverly v. Trump 182 F.3d 183, 188 (3rd Cir. 1999) (statement that "you people at [company] are all criminals" constituted protected hyperbolic opinion); Maholick v. WNEP TV, No. 3:CV-90-1517, 1992 WL 132543, at *3 (M.D. Pa. April 1, 1992) (allegations in a newspaper editorial that city councilman was a "thief" amounted to "rhetorical hyperbole in that it contained colorful opinions in the context of a political editorial, which could not be taken as literally verifiable fact").  Plaintiff furthermore has provided no evidence to "disprove" Defendant's questioning whether Plaintiff was a "soft Ponzi" because this statement has no recognizable meaning and is not capable of being disproved.  Indeed, the only explanation of the term identified by Plaintiff is the one provided by Defendant himself in which he defined the term as referring to the specifically legal practice of a consistently unprofitable company richly rewarding its management over time.  Opposition at 17-18.[6]  Plaintiff's attempts to shoehorn Defendant's actual statement – "soft Ponzi" – into a definition that it provided of a different term – "Ponzi scheme" – ignore Defendant's actual words and merely underscore that at worst the term at issue "has no generally recognized meaning."  See, e.g., Thomas Merton Center

---

*(footnote continued from preceding page)*
allegation, Plaintiff has effectively abandoned it.  Defendant's actual statement is apparently this excerpt from a post from August 6, 2009:  "Penultimately, as regards sleeping at night:  Jensen has no trouble sleeping.  He's a caricature of any number of characters in Dickens or Shakespeare whose worldview is that humanity exists to be fleeced.  They sleep well, that type."  Opposition at 5-6.

[6] Defendant actually explained his use of the term twice:  once (as pointed out by Plaintiff) on August 16, 2009, and once on July 21, 2009, when he stated (after quoting a statement of a previous poster):

> "Not 1 penny profit in this fugly company's sad history, yet millions have been paid in bonuses and directors' fees."
>
> USAT: soft Ponzi?
>
> A strong argument can be made that it's the very definition.
>
> If it's proof you desire, ask the less-than-theoretical question, Could this company have survived as long as it has if it had been privately held? Answer: not a chance. Private equity demands performance. The doors would have closed years ago.

Opposition at p. 4.  For the full context of this and other statements, including all of the statements in each of the threads in which Defendant made statements challenged by Plaintiff, see generally Exhibit 4 to Zimmerman Supplemental Decl.

v. Rockwell International Corp., 442 A.2d 213, 215-216 (Pa. 1981) ("If the court determines that the challenged publication is not capable of a defamatory meaning, there is no basis for the matter to proceed to trial."); Milkovich v. Lorain Journal Co., 497 U.S. 1, 2 (1990) ("[A] statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection.").

For similar reasons, Plaintiff has not satisfied its burden regarding the malice element. Plaintiff has made only an unsupported allegation of malice in its Complaint (and even there it was made in support of its Securities Exchange Act Claim and not in support of its defamation claim). See Complaint at ¶ 17. Plaintiff has furthermore introduced no evidence to support an assertion of malice. See, e.g., Lewis, 833 A.2d at 192 (malice must be proven applying a subjective standard by evidence "that the defendant in fact entertained serious doubts as to the truth of his publication," and "evidence of ill will or a defendant's desire to harm the plaintiff's reputation . . . without more, does not establish 'actual malice.'") (citing Sprague v. Walter, 656 A.2d 890, 906-07 (Pa. Super. Ct. 1995)).

In short, none of Plaintiff's allegations of defamation are backed by competent evidence that the statements in question are false or were made with malice. As a result, the subpoena must be quashed.

        3.    <u>Plaintiff Does Not Properly Allege Damages or Support Such an Allegation With Competent Evidence.</u>

Plaintiff also explicitly declines to offer any evidence in support of its allegation that "special harm resulted to USAT from [the] publication [of the allegedly defamatory statement]" (Complaint at ¶ 22), claiming instead that its allegations should be viewed as defamation per se. Opposition at 15. This argument is unavailing. First, a defamation per se claim is not available to corporate plaintiffs. See, e.g., Synygy, Inc. v. Scott-Levin, Inc., 51 F. Supp. 2d 570, 581 n.9 (E.D. Pa. 1999) (expressing "serious reservations about whether the doctrine of defamation per se is appropriately applied to corporate entities. . . . The rule of defamation per se as it applies to corporations has outrun its reason."); Cornell Companies, Inc. v. Borough of New Morgan, 512 F. Supp. 2d 238, 271 (E.D. Pa. 2007) (citing Synygy).

Second, this Court need not reach the question of whether a corporation can bring a defamation per se claim because Plaintiff failed to adequately plead or support with evidence that it was actually harmed. Defamation plaintiffs, even per se defamation plaintiffs, "must show 'general damages': proof that one's reputation was actually affected by the slander, or that she suffered personal humiliation, or both." Walker v. Grand Cent. Sanitation, Inc., 634 A.2d 237, 242 (Pa. Super. Ct. 1993). See also Smith v. IMG Worldwide, Inc., 437 F. Supp. 2d 297, 307 (E.D. Pa. 2006) (same). Plaintiff's naked allegation of special (i.e., pecuniary) harm in the Complaint is insufficient to show general (i.e., actual) damages. This mere recitation of the element of the statute without a specific factual allegation does not satisfy the notice pleading requirement under the Federal Rules, especially after the Supreme Court's decisions in Twombly and Iqbal. Plaintiff can neither satisfy its obligation to plead actual harm nor support that allegation with competent evidence. Plaintiff's subpoena must be quashed.

### III.  CONCLUSION

Plaintiff implies in its Opposition that Defendant must justify his desire to remain anonymous. Having chastised a publicly traded company and its management, however, especially one that has demonstrated that it will aggressively retaliate against its critics, Defendant has ample reason to want to protect his identity. As the Supreme Court stated in McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 357 (1995), "[a]nonymity is a shield from the tyranny of the majority ... [that] exemplifies the purpose [of the First Amendment] to protect unpopular individuals from retaliation … at the hand of an intolerant society." See also New York Times Co. v. Sullivan, 376 U.S. at 270 (First Amendment designed to protect "uninhibited, robust, and wide-open" debate on public issues). Defendant respectfully asks this Court to preserve his ability to exercise his First Amendment rights to offer his anonymous opinion on matters of public concern.

DATED:  December 11, 2009                    By   /s/Matthew Zimmerman
                                                  Matthew Zimmerman, Esq. (SBN 212423)
                                                  ELECTRONIC FRONTIER
                                                  FOUNDATION
                                                  454 Shotwell Street
                                                  San Francisco, CA 94110
                                                  Telephone: (415) 436-9333
                                                  Facsimile: (415) 436-9993

|  |  |
|---|---|
| 1 |  |
| 2 | Attorneys for Defendant-Movant<br>JOHN DOE "STOKKLERK" |