1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
**For the Northern District of California**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

USA TECHNOLOGIES, INC.,                          No. C 09-80275 SI

          Plaintiff,                          **ORDER GRANTING DEFENDANT'S**
                                    **MOTION TO QUASH**

  v.

JOHN DOE, A.K.A. "STOKKLERK," et al.,

          Defendants.
                                  /

     Before the Court is a motion by John Doe, a.k.a. "Stokklerk," to quash the subpoena of USA
Technologies, Inc.  This motion derives from an action filed in the  Eastern District of Pennsylvania
alleging violation of the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq., and Pennsylvania
common law defamation.  USA Technologies, Inc. asserts that the Eastern District of Pennsylvania has
federal question jurisdiction under 28 U.S.C.A. § 1331 over its securities claim and supplemental
jurisdiction under 28 U.S.C.A. § 1367 over its common law defamation claim.  Compl. ¶ 7-8.  After
consideration of the parties' papers, relevant legal authority, and good cause appearing, the Court hereby
GRANTS defendant's motion to quash.

**BACKGROUND**

**1.      Factual background**

     USA Technologies, Inc. ("USAT"), a publicly traded Pennsylvania corporation located in
Malvern, PA, provides "cashless, micro-transactions, and networking services."  Compl. ¶ 3.  Yahoo!
operates a website which provides, among many other things, online informational web pages about

United States District Court
For the Northern District of California

publicly traded companies.  Compl.  ¶ 4.  Yahoo! hosts web pages for publicly traded companies providing stock quotes and a message board on which individuals may pseudonymously post messages concerning the company or its stock.  Compl. ¶ 4; *see e.g.* Yahoo!'s USAT message board, http://messages.finance.yahoo.com/mb/USAT.

Between April 15, 2009 and August 24, 2009, defendant, an unidentified individual using the pseudonym "Stokklerk," submitted unflattering messages to Yahoo!'s USAT message board concerning USAT's officers, stock performance, and operations.  Compl. ¶ 6.  USAT cannot ascertain the identity of defendant due to his use of a pseudonym and has therefore subpoenaed Yahoo! for defendant's IP address.  Motion to Quash ("Motion") at 2:10-18; Zimmerman Decl., Ex. B.

**2.     Procedural background**

On August 27, 2009, USAT filed a complaint in the Eastern District of Pennsylvania alleging violation of the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq. ("securities claim"), and Pennsylvania common law defamation.  Compl. ¶¶ 7-8.  Soon after filing its complaint, USAT filed a Motion for Issuance of Subpoenas Duces Tecum direct to Yahoo! Inc. ("Yahoo!") for the production of defendant's IP address, so that USAT could obtain defendant's identity.  On September 10, 2009, Judge Jan Dubois of the Eastern District of Pennsylvania granted the motion, without prejudice to defendant's right to file a timely motion to quash.  On September 24, 2009 a subpoena issued from the Northern District of California, directing Yahoo! to produce defendant's IP address.  Responding to this subpoena, Yahoo! notified defendant that it would release his[1] IP address unless he filed a motion to quash the subpoena in the Northern District of California within fifteen days.  Motion at 2:19-21.  This motion to quash is properly before the Court pursuant to Fed. R. Civ. P. 45(c) because the subpoena in question was issued to Yahoo! by the Northern District of California.

---

[1]  The Court will refer to defendant as a "he" for convenience and to remain consistent with the parties' briefs.

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**3.      Allegedly defamatory statements made by defendant**

USAT bases its complaint on three discrete statements and one recurring statement made by "Stokklerk" on Yahoo!'s USAT message board.  In its Opposition brief and in oral argument, USAT also raised issue with another statement that was not mentioned in the complaint.  The allegedly defamatory messages are as follows:

1.  A message posted by defendant on August 6, 2009 at 2:02 p.m. allegedly accused USAT's Chief Executive Officer George R. Jensen of  "fleecing humanity."  Compl. ¶ 10(a).  Defendant Stokklerk's actual statement read: "Penultimately, as regards sleeping at night: Jensen has no trouble sleeping.  He's a caricature of any number of characters in Dickens or Shakespeare whose worldview is that humanity exists to be fleeced.  They sleep well, that type."  Plaintiff's Opposition to Defendants Motion to Quash ("Opp.") at 6:26-7:1.

2.  A message posted by defendant on August 4, 2009 at 8:29 p.m. allegedly accused Jensen of being a "known liar." Compl. ¶ 10(b).  Motion pg. 8.  Stokklerk's full statement read:

> The NASDAQ Small and Micro Cap exchanges are lousy with scam companies that, if they were limited partnerships, would have closed their doors in short order.  USAT is a failure.  It always was; it always will be.  Jensen is a known liar.  Several years ago (my memory fails; approx 2005-06; perhaps someone can nail down the exact year), he assured investors that USAT would be profitable in the same fiscal year.  The company didn't even come close.  No apologies, no explanations, no nothing.  Just more spin.

Opp. at 5:2-7.

3.  A message posted by defendant on August 16, 2009 at 11:29 p.m. allegedly accused USAT of "legalized highway robbery."  Compl. ¶ 10(c).  Stokklerk's full statement read:

> If you'll permit me . . .
> Re USAT: "This is legalized highway robbery."
> I think that's the very definition of a so-called soft Ponzi, vs. a shall we say hard Ponzi, which is, by definition illegal.  I don't recall where I got the definition.  A scholar of economics.  Rubini, maybe.  No matter.  It seems to fit.
> I think we're on the same page, different paragraph.

Opp. at 8:4-9.

4. Multiple messages posted by defendant allegedly accused USAT of being a "Ponzi scheme."  Compl. ¶10(d).  Most of these twenty-three statements were in the form of a question repeated in the message footer that stated: "USAT: soft Ponzi?"  Motion at 9:14-18; Opp. at 3-11.  On three instances, defendant described what was meant by the term "soft Ponzi."  First, on August 16, 2009, defendant

United States District Court
For the Northern District of California

defined the term in reference to the "legalized highway robbery" comment discussed above.  Second,

on August 18, 2009 he posted: "By golly, I think that I've inadvertently mentioned three characteristics

of a soft Ponzi scheme: outsized payments in the form of executive compensation in a failing enterprise;

interesting schemes to take in new money; the notion that success is just over the horizon.  USAT: soft

Ponzi?"  Opp. at 9:9-13.  Third, on July 21, 2009, he posted:

> Not 1 penny profit in this fugly company's sad history, yet millions have been
> paid in bonuses and director's fees."
> USAT: soft Ponzi?
> A strong argument can be made that it's the very definition.
> If it's proof you desire, ask the less-than-theoretical question, Could this
> company have survived as long as it has if it had been privately held?  Answer: not a
> chance.  Private equity demands performance.  The doors would have closed years ago.

Opp. at 4.

5.  Though not mentioned in the complaint, USAT argues it was also defamed by a message

posted by defendant on August 3, 2009 at 1:38 p.m. that allegedly accused the "two top people at

USAT" of "skimming."  Opp. at 4, 17.  Defendant Stokklerk's statement read:

> The two top people at USAT have skimmed over $30M from the hugely unprofitable
> venture.  Management, with little to nothing at risk, promotes a "story" to lure investors
> and then the board approves massive pay packages which are in no way tied to company
> performance."
>
> Definition of "soft Ponzi"?

Opp. at 4.


## LEGAL STANDARD

The First Amendment protects the rights of individuals to speak anonymously.  *Watchtower
Bible & Tract Soc'y of New York v. Village of Stratton*, 536 U.S. 150, 166-67 (2002); *McIntyre v. Ohio
Elections Comm'n*, 514 U.S. 334, 341-42 (1995).  "The right to speak anonymously extends to speech
via the Internet."  *See, e.g.*, *Doe v. 2TheMart.com Inc.*, 140 F. Supp.2d 1088, 1092-93 (W.D.
Wash.2001)("Internet anonymity facilitates the rich, diverse, and far ranging exchange of ideas."); *see
generally Reno v. ACLU*, 521 U.S. 844, 853, 870 (1997).

> People are permitted to interact pseudonymously and anonymously with each other so
> long as those acts are not in violation of the law.  People who have committed no wrong
> should be able to participate online without fear that someone who wishes to harass or
> embarrass them can file a frivolous lawsuit and thereby gain the power of the court's

order to discover their identity.

*Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578 (N.D. Cal. 1999). The Constitution does not, however, protect tortious, defamatory, or libelous speech. *Doe v. Cahill*, 884 A.2d 451, 456 (Del. 2005)(citing *Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 572 (1942)).

In order to protect anonymous speech, efforts to use the power of the courts to discover the identities of anonymous speakers are subject to a qualified privilege. This privilege recognizes the Constitutional protection afforded pseudonymous speech over the internet, and the chilling effect that subpoenas would have on lawful commentary and protest. *See Highfields Capital Mgmt. v. Doe*, 385 F. Supp. 2d 969, 974-76 (N.D. Cal. 2005). The application of procedures and standards for compelling the identification of anonymous online speakers "must be undertaken and analyzed on a case-by-case basis. The guiding principle is a result based on a meaningful analysis and a proper balancing of the equities and rights at issue." *Dendrite Int'l v. Doe No. 3*, 775 A.2d 756, 761 (N.J. App. 2001) (adopting a four-part test).

In *Highfields Capital Mgmt. v. Doe*, *supra*, this Court adopted a streamlined version of the *Dendrite* test that requires: (1) the plaintiff to adduce, without the aid of discovery, *competent evidence* addressing all of the inferences of fact essential to support a prima facie case on all elements of a claim; and (2) if the plaintiff succeeds, the court must:

> assess and compare the magnitude of the harms that would be caused to the competing interests by a ruling in favor of plaintiff and by a ruling in favor of defendant. If, after such an assessment, the court concludes that enforcing the subpoena would cause relatively little harm to the defendant's First Amendment and privacy rights and that its issuance is necessary to enable plaintiff to protect against or remedy serious wrongs, the court would deny the motion to quash.

*Highfields*, 385 F. Supp. 2d at 975-76.

## DISCUSSION

**1.     USAT's securities claim**

As to the first *Highfields* requirement, USAT has failed to plead, much less adduce competent evidence to support, a prima facie case for violation of Section 10(b) and Rule 10b-5. Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act", 15 U.S.C. § 78j(b)), and Rule 10b-5 (17 C.F.R.

5

United States District Court
For the Northern District of California

§ 240.10b-5), provide a private cause of action for fraudulent conduct related to the purchase or sale of securities.  In order to establish liability under these sections, "a plaintiff is required to prove that in connection with the purchase or sale of a security the defendant, acting with scienter, made a material misrepresentation (or a material omission if the defendant had a duty to speak) or used a fraudulent device." *S.E.C. v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1467 (2d Cir. 1996) (internal citations and quotations omitted).  USAT has failed to make out a prima facie case in support of its securities claim because it does not allege any facts that defendant ever owned or sold any USAT stock or submit competent evidence that Stokklerk's alleged statements distorted the market price for USAT stock, and that USAT was damaged as a result.[2]

USAT tacitly admits as much in its opposition brief by failing to address the securities claim, despite defendant's identification of deficiencies in that claim.  *See* Opp. at 19 n. 22 ("USAT does not address [its securities claim] here because it has established an actionable defamation claim under Pennsylvania law, which by itself must defeat Stokklerk's motion.").  At the hearing on this motion, USAT suggested that it cannot ascertain supporting facts for this claim unless this motion is denied and discovery is allowed.  However, *Highfields* makes clear that USAT is not entitled to discovery unless it can plead a prima facie case that defendant has acted unlawfully.  *Highfields*, 385 F. Supp. 2d at 975-76.  Further, this argument does not explain USAT's failure to identify an effect on its stock price caused by the defendant's statements.  No additional discovery from defendant should be necessary to identify a correlation of this kind. Though the ultimate question of federal jurisdiction will be decided by the Eastern District of Pennsylvania, the apparent deficiency of the claim, which is the sole basis for federal jurisdiction in this case, is an appropriate basis to grant the Motion to Quash.  *See, e.g., Sinclair v. TubeSockTedD*, 596 F. Supp. 2d 128, 134 (D.D.C. 2009) (refusing to enforce a subpoena seeking disclosure of the identity of an anonymous internet commentator, in part, because the court lacked subject-matter jurisdiction over the complaint); *United States Catholic Conference v. Abortion Rights*

---

[2] *See, e.g., Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005) (to plead a violation of § 10(b) and SEC Rule 10b-5, a plaintiff must allege that (1) defendants made a material misrepresentation or omission; (2) the misrepresentation was in connection with the purchase or sale of a security; (3) the misrepresentation caused plaintiff's loss; (4) plaintiff relied on the misrepresentation or omission; (5) defendants acted with scienter; and (6) plaintiff suffered damages. Each of these elements must be pleaded as to each defendant).

United States District Court

For the Northern District of California

1   *Mobilization, Inc.*, 487 U.S. 72, 76 (1988) ("if a district court does not have subject-matter jurisdiction

2   over the underlying action, and the process was not issued in aid of determining that jurisdiction, then

3   the process is void").

4

5   **2.      USAT's defamation claim**

6          Even if plaintiffs could cure the deficiencies in their securities claim by amendment — which

7   they would have to undertake in the Eastern District of Pennsylvania — the Court also finds that USAT

8   cannot demonstrate a prima facie case of defamation under Pennsylvania law because the statements

9   complained of are not defamatory as a matter of law.

10         Courts in Pennsylvania recognize a distinction between actionable defamation and mere

11  obscenities, insults, and other verbal abuse.  *Beverly v. Trump*, 182 F.3d 183, 187-88 (3rd Cir. 1999).

12  "'[S]tatements which are merely annoying or embarrassing or no more than rhetorical hyperbole or a

13  vigorous epithet are not defamatory.'"  *Id.* (quoting *Kryeski v. Schott Glass Techn.*, *Inc.*, 626 A.2d 595,

14  601 (1993)).  In *Beverly*, the Third Circuit held that it was "reasonably understood as a vigorous and

15  hyperbolic rebuke, but not a specific allegation of criminal wrongdoing" when defendant exclaimed at

16  a rally: "you people at [company] are all criminals."  *Beverly v. Trump*, 182 F.3d 183, 187-88 (3rd Cir.

17  1999).

18         Similarly, in this action the first complained-of statement asserts: "[Jensen is] a caricature of any

19  number of characters in Dickens or Shakespeare whose worldview is that humanity exists to be fleeced."

20  Although this statement may be seen as offensive, the law of defamation does not extend to mere insult.

21  *Beverly*, 182 F.3d at187-88.  As the colorful language indicates, this statement constitutes "rhetorical

22  hyperbole," and not a statement of fact that can be verified or disproved.  Similarly, the statement that

23  USAT's poor performance and executive compensation practices amount to "legalized highway

24  robbery" is not capable of defamatory meaning because it is rhetorical hyperbole and not provably false.

25  *Id.,* at 187-88.

26         The statement that Jensen is a "known liar," is not defamatory when read in context with the next

27  part of the post:  because Jensen "assured investors that USAT would be profitable in the same fiscal

28  year," when it wasn't.  Defendant's hyperbolic opinion of Jensen's inaccurate prediction is not

7

United States District Court
For the Northern District of California

defamatory.  *See, .e.g., Global Telemedia Int'l, Inc. v. Doe 1*, 132 F. Supp. 2d 1261, 1270 (C.D. Cal. 2001)("while [the statements] are not positive, the statement [that plaintiff lied] contains exaggerated speech and broad generalities, all indicia of opinion. Given the tone, a reasonable reader would not think the poster was stating facts about the company, but rather expressing displeasure with the way the company is run").  Also, here, Stokklerk did not opine that Jensen is a liar based on some other, undisclosed facts, but instead explained the basis for his opinion. *Cf., id.* at 1268 (where poster identified document supporting poster's view that plaintiff, "misrepresented" and "overstated" facts, statements were opinion).[3]

Defendant's statements regarding whether USAT is a "soft Ponzi" presents a slightly different question.  The term "soft Ponzi" has no widely-recognized defamatory meaning and USAT has presented no evidence suggesting that readers had any clue to its meaning except from defendant's statements on the message board. *See, e.g, Thomas Merton Center v. Rockwell International Corp.*, 442 A.2d 213, 215-16 (Pa. 1981) (if statements are not "capable of a defamatory meaning" there is no liability).  As noted above, *supra* at 3-4, Stokklerk actually defined his "soft Ponzi" term three times in his posts, in order to criticize the way he believed USAT was being run while admitting the conduct was legal. USAT also suggests that readers would have misunderstood this phrase to mean that USAT was operating as a traditional "Ponzi scheme."  However, USAT has presented no competent evidence that readers of defendant's posts understood the phrase "soft Ponzi" to mean "Ponzi scheme" as defined by plaintiffs.  Opp. at 2-3.

Finally, USAT contends that defendant accused its officers of "embezzling" by stating "the two top people at USAT have skimmed over $30M from the hugely unprofitable venture."  However, defendant in his next sentence states that these officers were paid through "board [approved] massive pay packages."  Again, read in context, Stokklerk's hyperbolic criticisms of the way USAT was being run are protected opinion.  USAT has provided no evidence in its complaint, briefs, or at the motion hearing that any reasonable reader understood the "skimming" based upon allegedly "massive pay

---

[3]  Plaintiffs also fail to allege or submit competent evidence that these disclosed facts are incorrect or incomplete or otherwise erroneous. *Cf. Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990).

packages" message to mean that USAT's top two officers had "embezzled." *Cf., Remick v. Manfredy*, 238 F.3d 248, 262-63 (3d Cir. Pa. 2001)(use of "extort," in context, constituted rhetorical hyperbole); *see also Greenbelt Coop. Publ'g Ass'n, Inc. v. Bresler*, 398 U.S. 6, 14 (1970) (finding "blackmail" accusation not defamatory because no reader could have thought that plaintiff was being charged "with the commission of a criminal offense").

Accordingly, plaintiffs have failed to plead, much less produce competent evidence to establish, a prime a facie case of defamation against Stokklerk.[4]

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendant's motion to quash.

**IT IS SO ORDERED.**

Dated: May 17, 2010

_____

SUSAN ILLSTON
United States District Judge

United States District Court
For the Northern District of California

---

[4] As the Court finds that plaintiffs have failed to plead or submit competent evidence to support a prima face case against defendant, the Court need not reach the second prong of the *Highfields* case, 385 F. Supp. 2d at 975-76, requiring a balancing of the harms caused to the competing interests from compelled disclosure of an anonymous poster's identity.